CITY OF TEXARKANA *v.* HUDGINS PRODUCE COMPANY.

## Opinion delivered March 2, 1914.

1. CIDER—SALE OF—REGULATION.—The sale of cider, either by wholesale or retail, is a proper subject of municipal regulation. (Page 23.)

2. CIDER—SALE OF—REGULATION—LICENSE FEE.—A license fee imposed by a city ordinance upon the sale of 'cider of $15 per month for wholesale, and $10 per month for retail, will not be held excessive as a matter of law, nor to have been passed for revenue only. (Page 28.)

3. MUNICIPAL CORPORATIONS—REGULATION OF BUSINESSES—REASONABLENESS.—The test of the reasonableness of an ordinance imposing a license for the purpose of regulation is, that if the sum is manifestly excessive and out of proportion to the regulation which will probably be required to make the ordinance effective, so that it is certain the city will derive a profit from the enactment of the ordinance, then, in all such cases it may be said that the purpose of the ordinance is to raise revenue, and the ordinance is void, in the absence of a statute authorizing its enactment for the purpose of raising revenue. (Page 28.)

4. MUNICIPAL CORPORATIONS—REGULATION OF BUSINESSES—REASONABLENESS.—Where a city undertakes to regulate a business by the imposition of a license fee, and the amount of the regulation is uncertain and its cost indeterminate, depending upon circumstances, which may vary, and it does not appear that the license imposed is out of proportion to the probable cost of the enforcement of the ordinance, so that the ordinance will necessarily be a source of income to the municipality, the ordinance will not be declared void, as having been passed for the purpose of raising revenue, rather than for purposes of regulation, although the operation of the ordinance in fact proves to be a source of profit to the municipality. (Page 28.)

Appeal from Miller Chancery Court; *James D. Shaver,* Chancellor; reversed.

### STATEMENT BY THE COURT.

The appellees brought suit in the chancery court of Miller County, Arkansas, to restrain the city of Texarkana, Ark., and Foster Rogers, its chief of police, from enforcing a certain ordinance of that city, regulating the sale of cider by wholesale and retail. The lower court issued a temporary injunction, which was made permanent on the final hearing.

So much of the ordinance, as we need consider here, reads as follows:

"Section 3. That the selling of cider, either at wholesale or retail, within the incorporate limits of the city of Texarkana, Arkansas, is hereby declared to be a privilege, and it shall be unlawful for any person or persons to engage in the sale of cider, either at wholesale or retail, until either he or they shall have complied with the provisions of this ordinance.

"Section 4. That each dealer in cider within the incorporate limits of this city of Texarkana, Arkansas, shall, before engaging in said business, whether at wholesale or retail, pay into the city treasury of the city of Texarkana, Arkansas, the following license fees, namely:

"(a)   Each wholesale dealer in cider shall pay the sum of fifteen ($15) dollars per month, payable monthly on the first day of each month.

"(b)   Each retail dealer in cider shall pay the sum of ten ($10) dollars per month, payable on the first day of the month.

"Any person or persons engaging in the business of selling cider within the said city of Texarkana, Arkansas, either at wholesale or retail, without having first paid the license fee required by this ordinance, shall be subject to a fine of twenty-five ($25) dollars for each offense; and each day that said business is so illegally carried on shall constitute a separate offense."

The complaint alleged that appellees, the Hudgins Produce Company, is a domestic corporation, and that the city of Texarkana, Arkansas, is a city of the first class, and that the Hudgins Produce Company is engaged in the wholesale grocery and produce business in said city, and is also engaged in the sale of sweet cider. The complaint further alleged that the ordinance was unreasonable, void and of no effect for the following reasons:

"*First.* That the city of Texarkana, Arkansas, is not empowered or authorized to pass any act to declare the wholesaling and retailing of cider a privilege, or to license or regulate the same, and that the effort of the

city to collect a license under the said ordinance is an illegal exaction, and an abuse of the power of the said city; and,

"*Second.* That the said ordinance is a revenue measure and that the amount of the tax is unreasonable, excessive and void; and,

"*Third.* That the ordinance is void because it contains and attempts to legislate upon more than one subject, and the subjects are not clearly expressed in the title."

Appellees rely upon the first and second grounds.

Appellants admitted in the answer that appellee is engaged in the wholesale grocery business in the city of Texarkana, Arkansas, and further admitted that it is engaged in the wholesale cider business; but denied that the cider sold by it was the cider commonly known as sweet cider, but it stated the truth to be that the cider sold by appellee was a cider made by a chemical process, with harmful and dangerous ingredients therein, and said cider, when fermented, contained a large percentage of alcohol, and that the carrying on of said business had a tendency dangerous to morals, health and public safety and came expressly within the terms and conditions of subdivision 4 of section 5648 of Kirby's Digest of the statutes of the State of Arkansas. Appellants deny the said ordinance is unreasonable and void and deny the city was not authorized, or empowered, to license or regulate, the wholesaling of cider and alleged that dealing in cider, as appellee was doing, was a business properly subject to the regulation of the city council, but it denied that the license fee provided for was imposed for the purpose of raising a revenue; but say the sole purpose of said ordinance was for the regulation of said business and the fees provided therefor were intended to pay the necessary expenses of such supervision.

Appellants further alleged that in order to ascertain the extent of the fermentation of said cider, and the adulteration thereof, it was necessary to make tests of the said cider, and that said tests are expensive, and are re-

quired to be frequently made, and that the license fee of $15 per month will not more than pay for the inspection or tests of said cider, and the proper regulation of the sale thereof. Appellants also stated that it is a duty of the chief of police of said city, made so by resolution of the said city council, to inspect the places where cider is sold, and to report to the mayor any dealer who is handling intoxicating cider. A copy of said resolution was attached as an exhibit to the answer and it reads as follows:

"Section 1. That the chief of police of the said city of Texarkana, Arkansas, and his assistants are hereby instructed and directed to inspect all cider offered for sale by wholesale and retail dealers within the city of Texarkana, Arkansas, and he shall see that said cider so offered for sale is pure and wholesome.

"Section 2. That in the inspection of the business of any wholesale dealer he may require from said dealer such reasonable proof of the quality of the cider to be sold, as will satisfy him that the same is pure and wholesome.

"Section 3. In the inspection of cider sold at retail by dealers within said city of Texarkana, the chief of police shall see that the places at which cider is sold are not made tippling houses, and that the cider so sold at said places is pure and wholesome and that the same is not hard nor intoxicating; it shall also be his duty to see that the places where said cider is retailed are kept in a clean and sanitary condition.

"Section 4. If the chief of police shall determine that any cider sold within the city of Texarkana, Arkansas, is unwholesome or intoxicating, it shall be his duty to report the seller of said cider to the mayor of the city of Texarkana, with his recommendation as to whether or not the license of said dealer should be revoked.

"Section 5. The chief of police shall furnish to each person granted a license to sell cider, a copy of

this resolution and the same shall be considered a part of said license.''

The ordinance requiring the license was passed on the 27th of May, 1913, and the resolution fixing the duties of the chief of police, in regard to the inspection of the cider, was passed on June 24, 1913. The complaint in this cause was filed on the 2d day of July, 1913.

Appellee says that the resolution prescribing the duties of the chief of police was passed merely to bolster up the ordinance, and that it can not be considered in determining the validity of the ordinance.

Appellee demurred to the answer, and this demurrer was sustained, and appellants, electing to stand upon their demurrer, have appealed.

*Frank S. Quinn*, for appellant.

1. Cider, being a beverage liable to fermentation and to becoming alcoholic, and, therefore, dangerous and harmful to the health, morals and good order of the community, is a proper subject for supervision and regulation by the municipality. Ample authority exists in the statutes for the enactment of the ordinance in question. Kirby's Dig., § § 5461 and 5648, sub-div. 4.

However inapt may be the word ''privilege,'' used in the ordinance, it should be construed as a regulation measure rather than an ordinance to raise revenue, since all presumptions are indulged in favor of the validity of a municipal ordinance, and it will not be declared void unless it plainly appears so. 88 Ark. 301; 52 Ark. 301: 64 Ark. 152. The presumption is also that the fee is for regulation where there is nothing to indicate a contrary intent. 36 Pa. 598; 230 Ill. 80, 82 N. E. 615. The power to regulate includes the power to license as a means of regulating. 41 Ark. 485; 23 Ark. 82.

2. Cider is an ''alcoholic beverage obtained by the fermentation of the juice of apples—formerly used of all kinds of strong liquors except wine; a drink made from the juice of apples.'' 7 Cyc. 130. See also 35 Fed. 570; 44 Kan. 90; 24 Pac. 92; 2 L. R. A. 415.

3. If, under the general welfare clause, cities have the power to regulate the sale of milk, and to regulate butcher shops, etc., they certainly have the power to regulate the sale of cider; and even if it be regarded as a harmless drink, its sale might still be subject to proper regulation and restrictions. 101 Ark. 238; 96 Ark. 199; 3 McQuillin, Mun. Corporations, 1998; Tiedeman, Limitations of Police Power, § 102; 143 Ky. 773, 137 S. W. 509.

Similar ordinances regulating the sale of cider have been sustained in other States. See 44 Kan. 607, 10 L. R. A. 520; 41 Pac. (Kan.) 956; 47 Pac. (Kan.) 174; 51 Pac. 807; 53 Pac. 787; 54 Pac. 5; 65 S. W. (Ky.) 794; 151 N. C. 718; 66 S. E. 301; 26 L. R. A. (N. S.) 890, and note; 65 S. E. (Va.) 570, 26 L. R. A. 883; 72 S. E. (Va.) 101; 66 S. E. (Ga.) 941; 23 S. E. 120; 30 S. E. 670; Century Digest, "Licenses," § § 5, 6, 19.

*William H. Arnold*, for appellee.

1. The subject of intoxicants is fully covered by sections 5454 and 5438 of Kirby's Digest, and there is nothing in sub-division 4 of section 5648 indicating any intention that a city council should be authorized to pass such an ordinance as the one in question. Had there been such an intention, it would no doubt have been expressed by proper words added to section 5454, *supra*. 31 Ark. 462. "It is an old and settled rule of statutory construction which confines the meaning of additional and general descriptive words to the class to which the preceding specific words belong." 95 Ark. 114; 73 Ark. 600; 67 Ark. 156; 74 Ark. 528.

2. The ordinance in question is purely a revenue measure. It does not pretend to regulate the sale of cider, which it. classes as a privilege, but gives the right to sell it to all persons who are willing to pay the price, and the size of the fee demonstrates the fact that the object of the city is to raise revenue. The subsequent resolution, passed about the time this litigation arose, authorizing the chief of police to make inspections, came too late to support the city's contention.

SMITH, J., (after stating the facts).    It is said that the ordinance is void because it designates the business of selling cider, either at wholesale or retail, as a privilege, and undertook to derive a revenue from the exercise of this privilege by imposing a tax so excessive that its purpose to raise revenue is made manifest.    It is true the business of selling cider is referred to as a privilege; but the use of that term is not controlling in the consideration of the purpose of the ordinance.    It is proper to consider not only the amount of the license fixed by the ordinance; but it is necessary also to consider the nature of the business sought to be regulated, and the probable regulation which will be necessary to effectuate the purposes of the ordinance.

Appellants say the authority to pass the ordinance in question is found in the fourth subdivision of section 5648 of Kirby's Digest, which section confers additional and enlarged powers upon cities of the first class, and that the part of said section conferring the authority for the ordinance under consideration reads as follows: "And to prevent or regulate the carrying on of any trade, business or vocation of a tendency dangerous to morals, health or safety * * * and to prevent, abate or remove nuisances of every kind, and to declare what are such." To determine whether or not the ordinance in question is authorized, and the authority for its enactment conferred by the language quoted it will be necessary for us to consider whether or not the sale of cider is a proper subject of municipal regulation; and, if it is found to be, then the further question arises whether or not the fee imposed by said ordinance was designed to cover the estimated cost of regulation, or was intended as a means of raising revenue.

Is the sale of cider a proper subject of regulation? Appellee says that if this ordinance is not void, cities may impose a license upon all merchants as such.    But we think this is not so, for in our opinion the sale of cider is not an improper subject of regulation.    Cider is defined in 7 Cyc. 130, as "an alcoholic beverage obtained

by the fermentation of the juice of apples; a fermented liquor made from the juice of apples—formerly used of all kinds of strong liquors except wine; a drink made from the juice of apples." An interesting case which discusses the chemical composition of cider, and which shows that it may be an alcoholic and intoxicating beverage, and when such can not lawfully be sold in a State whose statutes prohibit the sale of alcoholic or fermented liquors, is *Eureka Vinegar Co.* v. *Gazette Printing Co.,* 35 Fed. 570. This is a very learned opinion and was delivered by Justice Caldwell, as judge of the Circuit Court of the Eastern District of Arkansas.

The city of Lawrence, in the State of Kansas, passed an ordinance regulating the sale of cider, which was not intoxicating, and prohibited its sale in less quantity than one gallon and forbid the drinking of same at the place of sale. This ordinance was attacked upon the ground that it was a violation of private rights, and was an unreasonable restraint upon trade, and was not authorized under any legislative enactment of the State. It was held that "the legislative power given to city councils to enact and make all such ordinances, by-laws, rules and regulations, not inconsistent with the laws of the State, as may be expedient for maintaining the peace, good government and welfare of the city and its trade and commerce," was a sufficient authority for the enactment of such an ordinance. It was there insisted that cider is a harmless and wholesome drink and that the restraint upon its sale was unreasonable, in contravention of a common right and therefore unconstitutional. In upholding that ordinance the Supreme Court of that State said: "The ordinance was manifestly not enacted in pursuance of the prohibitory law, nor for the regulation of the sale of intoxicating liquors. The ordinance inferentially permits the sale of cider in quantities of a gallon or more, and the penalty for its violation may be $10, without imprisonment. These provisions are not consonant with the laws prohibiting and punishing the unlawful sale of intoxicating liquors, and hence we must infer

that the ordinance was passed for the purpose of controlling the sale and disposition of cider that was not intoxicating. It will be observed that the ordinance regulates, rather than prohibits, the sale of cider and the legislative power to regulate the sale of an article or liquid, which, in some stages, is harmless and in others hurtful, is no longer open to question. The juice of apples quickly changes from fresh to hard cider, and hard cider is presumptively not only a fermented but an intoxicating liquor. *State* v. *Schaefer,* 44 Kan. 90. It is difficult to say when the change occurs, and when it reaches such a state as will produce intoxication. It may have been thought that the drinking of cider might foster a taste for strong liquors, and that if the unrestricted sale of cider by the glass was permitted, the officers might be easily deceived as to the character of drinks sold and that a tippling shop might be carried on under the guise of a place to sell cider. In the interest of the health of the people, and the peace and good order of the communities, it was deemed wise to regulate the traffic. To sell it by the gallon and allow it to be drunk upon the premises, where sold, was deemed to be subversive of good order and dangerous to the health and morals of the people, and hence they imposed a regulation that it should not be sold in less quantities than one gallon, and should not be drunk at the place of sale. Such a regulation violates no private right and does not unreasonably or improperly restrain trade." The court then proceeds to show that while there is no provision of the statutes of Kansas directly authorizing the enactment of such an ordinance, yet that the city possessed authority to pass the ordinance under the general welfare clause, which authorized city councils "to enact and to make all such ordinances, by-laws, rules and regulations, not inconsistent with the laws of the State, as may be expedient for maintaining the peace, good government and welfare of the city and its trade and commerce." *Monroe* v. *Lawrence,* 44 Kan. 607, 10 L. R. A. 520.

It is a matter of common observation that where the sale of liquor has been prohibited, a common method of violating the law, which works this prohibition, is to engage ostensibly in the sale of what is ordinarily called soft drinks, and that cider is one of the drinks so sold. And we know, too, from the authority of the cases herein cited that, by processes of fermentation, cider may cease to be sweet and become intoxicating.

Other interesting cases on this subject are those of *Commonwealth of Pennsylvania* v. *Reyburg*, 2 L. R. A. 415; In re *Jahn*, 41 Pac. 956; *Lincoln City* v. *Linker*, 47 Pac. 174; 51 Pac. 807, and 53 Pac. 787; also *Eureka* v. *Jackson*, 54 Pac. 5.

At the time of the passage of the ordinance in question it was unlawful to sell intoxicating liquors of any character within ten miles of the city of Texarkana, it having been made so by Act No. 26, of the Acts of the General Assembly of 1913, prohibiting "the sale or giving away or storing or keeping stored for another person any alcoholic liquors, or any spirituous, ardent, vinous, malt or fermented liquors, or any compound or preparation thereof commonly called tonics or medicated liquors," which act of the General Assembly was approved February 7, 1913. This ordinance does not give one, who pays the fee therein provided, the right to sell any kind of cider, the sale of which is made unlawful by the special act of the General Assembly above mentioned. Evidently, one of the purposes of the ordinance is to obtain information if cider was sold which it was unlawful to sell. The resolution dated June 24, 1913, expressly so provides. But even though we may not consider this resolution in ascertaining the purpose of the ordinance, the answer alleged that the chief of police had frequent inspections made by chemical analysis to ascertain the character of cider being sold by the various dealers therein in the city. It can not be said that the purpose of an ordinance is not that of regulation, simply because the ordinance contains no provision for the inspection or regulation of the business to be licensed thereunder. In

the case of the *City of Helena* v. *Miller,* 88 Ark. 263, where a municipal ordinance of the city of Helena imposed an annual license fee of $25 upon hotels and $15 upon boarding houses, the contention was made that the ordinance was void, as having been passed for the purpose of raising revenue and not for the purpose of regulation, because no provision was contained in the ordinance providing for the inspection or superintendence of the business there licensed; but the court held that the ordinance should not be declared void on that account. We have many cases which discuss the authority of municipal corporations to impose a license, such as is imposed by the ordinance now under consideration, and it has been said in a number of these cases that it is our duty to indulge every reasonable presumption in favor of the validity of the ordinance, and not to declare it void unless it plainly appears to be so.

In the case of *Helena* v. *Miller, supra,* it is said: "It is difficult for the court to draw the line precisely between amounts which are reasonable and those that are unreasonable. The license fee fixed by the ordinance may, however, be so high that the court will, on the face of it, declare it to be unreasonable (*Stamps* v. *Burk,* 83 Ark. 351), or so low that the court will declare it to be reasonable." A leading case on this subject, and one which has been generally quoted in the different opinions of this court, is the case of *Fayetteville* v. *Carter,* 52 Ark. 301, in which case it was said: "A fee sufficient to cover the expenses of issuing the license, and to pay the expenses which may be incurred in the enforcement of such police inspection or superintendence as may be lawfully exercised over the business, may be required. It is obvious that the actual amount necessary to meet such expenses can not in all cases be ascertained in advance, and that it would be futile to require anything of the kind. The result is, if the fee is not plainly unreasonable, the courts ought not to interfere with the discretion of the council in fixing it; and unless the contrary appears on

the face of the ordinance requiring it, or is established by proper evidence, they should presume it reasonable.''

In the case of *Trigg* v. *Dixon,* 96 Ark. 199, an ordinance of the city of Texarkana, Arkansas, which imposed a license of $50 upon all persons engaged in the business of a butcher was upheld. That ordinance was upheld as having been authorized both under section 5438 of Kirby's Digest, giving cities and towns power to establish and regulate markets, and also under section 5648, subdivision 4, giving cities of the first class authority to prevent or regulate the carrying on of any trade, business or vocation of a tendency dangerous to morals, health or safety, and it was said there, as has been said in numerous other cases, ''the power to regulate includes the power to license as the means of regulating.''

Upon consideration of the decisions in various cases of our own, as well as of other courts, we think the test of the reasonableness of an ordinance imposing a license for the purpose of regulation may be said to be, that if it is such a sum as is so manifestly excessive, and out of proportion to the regulation which will probably be required to make the ordinance effective, so that it is certain the city will derive a profit from the enactment of the ordinance, then, in all such cases it may be said that the purpose of the ordinance is to raise revenue, and such ordinances are void, when no statute authorizes their enactment for the purpose of raising revenue.

On the other hand, if the amount of the regulation is uncertain, and its cost is indeterminate, depending upon circumstances, which may vary, and it does not appear that the license imposed is so out of proportion to the probable cost of its enforcement as that the ordinance will necessarily be the source of income to the municipality, such ordinances should not be declared invalid, as having been passed for the purpose of raising revenue, rather than the purpose of regulation, although they may in fact prove to be the source of profit to the municipality.

We conclude, therefore, that the sale of cider either by wholesale or retail is a proper subject of municipal regulation; and that the license imposed by the ordinance in question is not so excessive that we must say, as a matter of law, it was passed for the purpose of raising revenue; and the decree of the court sustaining the demurrer to appellant's answer is therefore reversed, and the cause will be remanded with directions to overrule said demurrer.