Bowers *v.* City of North Little Rock.

4-3658

Opinion delivered January 14, 1935.

*Tom F. Digby* and *Carmichael & Hendricks,* for appellant.

*Joe N. Wills, Fred A. Donham* and *Alfred W. Taylor,* for appellee.

Butler, J. Twenty-five or thirty years ago John Bowers, Jr., the appellant, entered into a contract with the city of Argenta by which he was given the exclusive right and privilege of cleaning the unsewered privies which were at that time and which might thereafter be located within the corporate limits of the city, now the city of North Little Rock. It is conceded that this contract was valid and has been, by proper ordinance of the successor city, renewed from time to time; that on October 16, 1922, under proper ordinance, the contract was extended for a period of ten years. On April 27, 1931, the city authorized the board of public affairs to enter into a contract with the appellant whereby he was to clean the unsewered privies of the city for a period of ten years from that date. There is a dispute as to whether or not

this ordinance was ever complied with by the board of public affairs and the appellant by the entering into of a formal contract. However, it appears that the appellant has been acting under that ordinance, and we assume, without deciding, that the contract was in fact entered into.

By the terms of the several contracts, the appellant was required to, and did, execute bonds for the faithful performance of the requirements on his part, paying to the city certain sums for the necessary police supervision and inspection. It appears that he has performed the services under his various contracts in a satisfactory manner. Under the terms of these contracts he was to clean the privies at stated intervals for which the occupants of the premises attended to should pay the sum of fifty cents per month during a part of the year and seventy-five cents per month through the summer and early autumn months. This amounted to approximately $9 a year for each privy. Bowers was not required, under his contracts, to clean any one of the privies where the occupant failed to pay the monthly charge.

At the beginning of the depression, a number of the privy owners failed to pay the cleaning charges, this number increasing with the passage of time, so that of the eleven hundred unsewered privies in the city there are now about seven hundred where the cleaning charges have not been paid for a considerable period of time and which have not been cleaned during the time these charges have been in arrears. A large per cent. have not been cleaned for more than a year.

A new type of privy has been designed called a "pit privy" which is thought to be an improvement over the old-fashioned open-type commonly in use in the city of North Little Rock. It is designed so that the opening will automatically close after using and the excreta will fall into an inclosed pit, dug to a depth of about four feet in the ground. The health department of the city, co-operating with State and governmental agencies, provided a means whereby these privies could be installed with a cost to the owner of material only, estimated to be about $12 per privy. An ordinance was passed by the

city providing that no unsewered privy should be erected or used on any property to which the public water supply is available and which is within three hundred feet of an existing sanitary sewer to which said property might connect, and that all privies built within the city should be of an approved sanitary type, and no pit type sanitary privy should be constructed without written approval by either the county or city health officer.

Under this ordinance, the health authorities were approving and encouraging the erection of pit-type sanitary privies and quite a number of such privies had been, and were in preparation of being, installed when the appellant brought this action on the ground that the ordinance last mentioned—numbered 969—and the action of the health department thereunder lessened the number of unsewered privies to be cleaned, resulting in damage to him. He prayed that the city and its officers be prohibited from building or causing to be built the new type of privies. From an adverse judgment of the Pulaski Chancery Court he has appealed and seeks a reversal on the ground that by lessening the number of privies to be cleaned his contract with the city is impaired, and that Ordinance No. 969 and the attempted action of the city officers thereunder amounts to the impairment of the obligation of his contract within the meaning of our constitution and laws.

This contention cannot be sustained. A preponderance of the evidence tends to prove that, while there was no epidemic of any disease at the time of the passage of the ordinance complained of and the beginning of the installation of the new type privies, such condition might be reasonably anticipated. There were a few cases of typhoid and quite a number of intestinal disorders which the health authorities attributed to disease germs in the human excreta carried by flies throughout the city. The odors were bad, tending to the discomfort of the inhabitants, and the health authorities feared the spread of disease within the city. It was shown that the pit-type privy was a much better and more sanitary privy than those in common use. They are so arranged that no odors are perceptible, and, because of their peculiar ar-

rangement, flies do not enter into the pits, and thus the danger of the spread of disease germs is removed. Therefore, the installation of the pit-type privies was a reasonable method by which the comfort of the inhabitants of the city might be improved and the spread of disease germs lessened, thereby conserving the public health and safety.

It must be conceded that the comfort of the citizen and the preservation of his health comes within a proper exercise of the police power of the State, which, as to the inhabitants of municipal corporations, has been delegated by the State to the municipality. Section 7529, Crawford & Moses' Digest.

One has no vested rights in the benefits to be derived from any contract where to continue such contract would be inimical to the public health and safety, nor is this contract such that its obligations may not be impaired. It is familiar law that the State cannot part with its right to exercise the inherent attributes of sovereignty, among which undoubtedly is the police power. The retention and exercise of this power by the State is necessary for the protection of citizens and cannot by any means be bartered away. This applies to the police power delegated to municipal corporations. It is a continuing power which the municipality cannot part with by contract, or by any other means. This being the law, it follows that the city of North Little Rock was in the proper exercise of its powers in seeking the installation of privies which, in the judgment of the health authorities, would tend to preserve the health of its citizens, although some damage might result to the appellant. Of this he cannot complain, for he took his contract subject to the exercise by the city of its police power whenever the need might arise.

It appears that the trial court was asked to cancel the bond given by the appellant to the city to insure the discharge by him of the obligation of his contract. This the court refused to do. It does not appear that the appellant has ceased to operate under his contract, or that a very considerable number of pit privies have yet been installed, and in the present state of the case we cannot

say that the trial court erred in refusing to cancel appellant's bond.

On the whole case, we are of the opinion that the decree of the court below is correct, and it is therefore affirmed.