MOON *v.* GEORGIA STATE SAVINGS ASSOCIATION.

4-6022 142 S. W. 2d 234

Opinion delivered July 8, 1940.

---

[2] *Briner* v. *Holleman,* 115 Ark. 213, 170 S. W. 1010; *Smith & Shoptaw* v. *Stanton,* 187 Ark. 447, 60 S. W. 2d 183.

 

*Gordon B. Carlton* and *E. K. Edwards,* for appellant.

*Abe Collins, Verne McMillen* and *Dorothy Shepard,* for appellee.

GRIFFIN SMITH, C. J. Appellee owned property in the city of DeQueen embraced within Sewer Improvement District No. 4.[1] It neglected to pay benefits assessed for 1931 and 1932. There was decree of foreclosure October 22, 1934, with sale July 6, 1935, the district being purchaser. Confirmation was had October 28, 1935. August 14, 1939, the district executed its warranty deed to appellant, conveying the property it had so acquired.

One of the grounds urged to set aside the district's sale to appellant is that it was contrary to public policy.

At the time the sale to appellant was made, W. T. Lamb was collector for the district. Appellant Moon is Lamb's father-in-law.

Moon supplied the purchase money, and testified, in respect of his agreement with Lamb:—"Well, he would look after [the property], and if he made any money out of it, . . . we would divide it."

Although no statute has been brought to our attention expressly prohibiting the collector of a municipal improvement district from purchasing property from the district, we think sound public policy requires complete separation of private transactions from official conduct. Because of his close contact with commissioners who are charged with the duty of disposing of property acquired through foreclosure proceedings, the collector enjoys privileges of relationship denied by circumstances to the general public.

---

[1] Appellee contends the property is worth $4,000.

In the instant case we have a situation where the person whose duty it was to collect taxes for the district procured from the commissioners for a grossly disproportionate consideration valuable real estate—property admittedly worth $4,000. He paid only the delinquent taxes, penalties and costs, amounting to $104.80.

Insofar as the commissioners are concerned, it may be said that the transaction was merely perfunctory; that they had the legal right to make the sale for an amount equal to the indebtedness, and no active breach of trust is to be imputed to them. Custom has long sanctioned the procedure. But the fact remains that if the delinquent taxpayer is to be deprived of his property because of an obvious oversight regarding the 1931-1932 delinquencies,[2] good business principles require that the district should receive a price reasonably commensurate with value. "Value," of course, would be affected by condition of the title; but where ownership by the district is such as to merit approval by a prudent examiner, there is no warrant for disposing of such property at a fantastically disproportionate figure. Other than the amount for which the property sold, there is nothing in the record to suggest collusion between the commissioners and appellant,[3] or between Lamb and the commissioners; nor is there suggestion that they are the type of men who would consciously disregard their public obligations.

In holding that the purchase was contrary to public policy, we have not overlooked *Hare et al.* v. *Carnell et al.*, 39 Ark. 196, where it was held that a deputy sheriff was not precluded from bidding on property, "as a bystander." It was alleged that Hare was deputy collector. The opinion states that he was deputy sheriff, and

[2] Assessments for preceding and succeeding years were paid. In view of this conduct it is inconceivable that if personal notice of the delinquencies had been received there would have been a refusal or failure to pay. This opinion, however, is not predicated upon want of notice, which the chancellor found, from requisite testimony, was given.

[3] While appellant was the nominal purchaser, the evidence is conclusive of the proposition that Lamb, the collector, was acting for himself and for appellant. Hence, to the extent of any interest Lamb retained in the transaction by reason of the sale to appellant, the purchase was for the benefit of Lamb. The interests are not severable.

that ". . . it was not shown [that he] had any control of the collection for taxes, or of the sales."[4]

While as a general rule public policy is promulgated by the General Assembly, and in the absence of pronouncement upon a given subject it may be presumed there was no intent to regulate, prohibit, or control, yet occasions arise where from the very nature of the resulting injury and for want of statutory relief the courts must say that the public welfare is involved, and that such consideration is paramount to the so-called freedom of action or uncontrolled privilege asserted by an individual.

It is our view that application of that principle is required in the case at bar. Therefore, the decree will be affirmed.

[4] By statute (Pope's Digest, § 13854) the collector, his deputies, the clerk of the county court, and his deputies, are prohibited from being concerned, directly or indirectly, in the purchase of any tract of land sold for the payment of taxes.