VAN HOVENBERG *v.* HOLMAN.

4-5990                                               144 S. W. 2d 718

Opinion delivered November 18, 1940.

*James D. Head,* for appellants.

*Ben Shaver, J. I. Wheeler* and *C. E. Johnson,* for appellees.

GRIFFIN SMITH, C. J. The trial court refused to enjoin appellees from erecting and maintaining a filling station on the northeast corner of block 24, facing Beech at Seventh street in the city of Texarkana, and property owners have appealed.

An ordinance (validity of which is not questioned) requires those proposing to "construct, erect, or operate" a filling station to procure a permit from the municipality. Two ordinances applicable to filling stations were

adopted under §§ 9589 and 9543 of Pope's Digest, granting cities the power to prevent injury or annoyance, and also the right to enact such ordinances (not inconsistent with state laws) as might be deemed necessary to provide for the safety, comfort, and convenience of the inhabitants of such cities. Texarkana has no zoning ordinance, but it is contended by appellants that ordinances adopted pursuant to the statutory provisions afford protection, and that they were entitled to the relief prayed for. Cases wherein the Digest sections were involved are shown below.[1]

The complaint recites that Beech street, since 1878, has been a strictly residential district. Along the street are residences, churches, and schools. From Fourth to Ninth street no business house has ever been erected.[2]

Averment was that plaintiffs' homes and the homes of those living on adjacent streets east "are more than four blocks from the business district of Texarkana, and that their properties are practically valueless for any purpose other than for residences."

For many years John W. Holman had been a member of the city council. Appellants, in their brief, assert that on numerous occasions he had voted against per-

[1] *Trigg* v. *Dixon*, 96 Ark. 199, 131 S. W. 695; *Texarkana* v. *Hudgins Produce Co.*, 112 Ark. 17, 164 S. W. 736; *Bourland* v. *Pollock*, 157 Ark. 538, 249 S. W. 360; *Commack* v. *Little Rock*, 154 Ark. 471, 243 S. W. 57; *Sanders* v. *Blytheville*, 164 Ark. 434, 262 S. W. 23; *Means* v. *American Eq. Assurance Co.*, 186 Ark. 83, 52 S. W. 2d 737; *Berkau* v. *City of Little Rock*, 174 Ark. 1145, 298 S. W. 514; *Earl* v. *Shackleford*, 177 Ark. 291, 6 S. W. 2d 294; *North Little Rock* v. *Rose*, 136 Ark. 298, 206 S. W. 449; *Little Rock* v. *Rhineland*, 107 Ark. 174, 155 S. W. 105; *Bowers* v. *City of North Little Rock*, 190 Ark. 175, 77 S. W. 2d 797; *Pierce Oil Corporation* v. *City of Hope*, 127 Ark. 38, 191 S. W. 405.

[2] There is the further allegation that "The business district, for twenty years, has been 'practically' restricted to Front, Broad, and Third streets, and to State Line avenue," and "except for sporadic instances of small grocery stores there are no business establishments within four or five blocks of the corner of Seventh and Beech streets, other than three or four filling stations and two or three restaurants located on Seventh street, all west of Beech street and between said street and State Line avenue. The residential district extends east from Beech street across Hickory street, Pecan street, and Locust street, [all of which] run north and south, as does Beech street, while Seventh street runs east and west. There are no business houses of any kind located on either Beech, Hickory, Pecan, or Locust street to the south and Ninth street to the north. In said residential district there are both modest homes and splendid and stately residences."

mitting filling stations to be erected "on the two corners on the west side of Beech street at Seventh."[3]

In November or December, 1938, Holman purchased the lot which forms the subject-matter of this appeal, and without procuring a permit from the city began excavating for construction. As soon as the purpose for which the building was to be used became apparent, injunctive relief was sought.

In May, following completion of the filling station, The Texas Company presented to the city council its application for permission to operate. Notice of intent was duly given by publication, as required by ordinance. Four of the city's eight aldermen voted to grant the permit, two voted against it, a third withheld his vote, and one was absent. Included in the four voting to grant the permit was Holman, owner of the property.

Holman's lease to The Texas Company, while dated December 13, 1938, was not recorded until February 27, 1939. Appellants' suit was filed March 2, 1939.

The lease is for ten years, and calls for payment of $125 per month to Holman and his wife, with option to purchase for $20,000. It may be terminated at the end of five years by payment of $2,600.

When Holman, as a member of the city council, participated in consideration of The Texas Company's application for permit, a challenge to his vote was sustained. The city attorney ruled that since a majority of those voting had favored the application, it had been legally granted.

(A record of other votes on applications for filling station permits is shown below.)[4]

---

[3] The evidence seems to sustain this statement.

[4] Application of Morris Sandberger for filling station at the northwest corner of Seventh and Beech was acted on by the Council May 10, 1938. On motion that the request be denied, all aldermen present, including John W. Holman, voted "aye" and the permit was denied.

April 26, 1938, an application by Sandberger which was before the Council was referred to the Street and Alley Committee.

April 14, 1936, Thad A. Bryant, trustee, made application for filling station on the lots here in question. On motion that the petition be denied, on roll call, five aldermen, including John W. Holman, voted "aye" and three voted "no" whereupon the petition was denied.

On another application (March 24, 1936) for filling station on the lots in question by Thad A. Bryant, trustee, on motion that the

Ordinances B-358 and B-567 were introduced in evidence. The first, by express language, makes it unlawful for any person to erect or operate a gasoline filling station without first having secured permission. A condition precedent is that notice must be given by publication for ten days in a daily newspaper. Punishment for violation is a fine of not less than $50 nor more than $100. The regulation bears date of May 27, 1924.

Ordinance B-567, adopted November 13, 1934, amended the prior ordinance by requiring those applying for a permit to give the notice ten days prior to the next regular meeting of the city council. Other provisions not of importance here were included.

If Holman was ineligible to vote in favor of granting a permit to The Texas Company, clearly no permit was granted, unless the issue can be determined by a majority of those voting on the question, even though they be less than a majority of all elected members.

Section 9588 of Pope's Digest is: ''To pass any by-law, ordinance, resolution, or order, a concurrence of a majority of the whole number of members elected to the council shall be required.''

permit be granted, four aldermen voted "aye" and three aldermen voted "no," Holman absent and not voting, whereupon the mayor announced the motion lost.

August 27, 1939, an application was made to the city council for permit for station at Seventh and Beech, and on roll call, on motion that the permit be denied, seven aldermen voted "aye" and one voted "no," and the permit was denied.

August 13, 1935, an application by Mrs. H. H. Kault for filling station on the northwest corner of Seventh and Beech was before the council and a committee was appointed to look into the matter.

Certified copy of the notice given (on the second application by Bresewitz) for filling station at Seventh and Ash at the southwest corner of block 13, shows the printed notice dated August 8, 1936, and that the date on the proof of publication was changed in pen and ink to 9-11-36. The original notice of August 8, 1936, also appears in the record. September 22, 1936, pursuant to the notice carrying printed date line of August 8, 1936 (and later changed to September 11, 1936) at a meeting of the council Bresewitz was granted a permit for a station on the southwest corner of block 13, all aldermen voting "aye." At the meeting of August 25, 1936, pursuant to the notice of August 8, on motion made and seconded to deny the petition of Bresewitz for a station at the southwest corner of block 13, at Ash and Seventh, on motion that the petition be denied, three aldermen voted "aye" and four voted "no," whereupon the mayor announced that the motion was lost. The mayor again ordered the roll call on motion to grant the petition and four aldermen (Holman not shown to be voting) voted "aye" and three voted "no," whereupon the mayor announced the motion lost.

Although no permit was ever given Holman, as distinguished from The Texas Company, he first gave notice December 17, 1938, of an intent to make application. In appellants' brief it is asserted that the purpose was abandoned when property owners protested. A second notice was given after the station had been completed. This, also, was abandoned.

It is insisted by appellees that a mere motion to grant a permit does not require approval of a majority of the elected members of the council.

In *Village of Altamont v. Baltimore & Ohio S. W. Railroad Company,* 184 Ill. 47, 56 N. E. 340, it was said: "A resolution or order is not a law, but merely the form in which the legislative body expresses an opinion. An ordinance prescribed a permanent rule of conduct or government, while a resolution is of a special and temporary character. Acts of legislation by municipal corporations which are to have continuing force and effect must be embodied in ordinances, while mere ministerial acts may be in the form of resolutions. . . . Where the charter requires an act to be done by ordinance, or where such a requirement is implied, as it is here, by necessary inference, a resolution is not sufficient, but an ordinance is necessary."

The public policy of the city of Texarkana was expressed by ordinance. The prohibition against erecting and operating filling stations without permission was a regulation within the city's police power, intended for the benefit of all. Many factors are involved. The use of gasoline, oils, and other inflammables create fire hazards which the city may regulate. Whether a particular community, (suitable, preferentially, as a residential district) shall be invaded by construction and operation of a filling station is a matter which, under state laws, may be regulated, even though the station, *per se,* is not a nuisance.

In *Bickley v. Morgan Utilities, Inc.,* 173 Ark. 1034, 294 S. W. 28, it was said: "If it is true that, where an industry is established at a place remote from population and is afterwards surrounded and becomes part of a

populous center, the industry becomes a nuisance so that it will be restrained by the court, certainly, when the place selected is in a residential district, and the persons proposing to establish the ice plant are notified before any material is placed on the ground, it is the duty of the court to prevent the nuisance, if the proof shows it to be such.''

The city of Texarkana, by ordinance, has placed filling stations in a class requiring regulation. Its policy has been declared by a method embracing all the legal formality and dignity which the aldermen are capable of exercising. May it now be said that discretion of the council to apply the policy in a given case may be expressed by a method of less dignity? The answer must be adverse to appellees' contentions.

But, irrespective of the requirement that the permit be granted by a majority of all members elected to the council, here, on the face of the record, and under the proof, only four members sanctioned the transaction, one of whom was Holman, who made the motion.

We have recently held that the collector for a municipal improvement district can not purchase tax-forfeited lands acquired by the district, and that a commissioner of a bridge district will not be permitted to purchase tax-forfeited lands from the district. *Moon* v. *Georgia State Savings Association,* 200 Ark. 1012, 142 S. W. 2d 234; *Mitchell* v. *Parker, ante,* p. 177, 143 S. W. 2d 1114.

It would be inconsistent if the law were that the collector of an improvement district, and a bridge district commissioner, could not profit through transactions with the districts, but an alderman could disregard the ordinances he has sworn to uphold by illegally constructing a filling station, and then consummate his plan to lease it by adding his vote to three others and relying upon such conduct for security.

Appellees insist that, since an ordinance pronounces penalty for violation, appellants' rights are thereby circumscribed, and injunction does not lie. We cannot assent to this view. The ordinance prohibits erection and operation without the permit, and fixes a penalty of not

more than $100 for violation. But the primary and fundamental purpose of the ordinance was to prohibit operation—not to punish. It is definitely settled that equity will not interfere to stay proceedings in a criminal matter. Here, however, the relief sought is abatement of unauthorized conduct. If it should be held that penalty of the ordinance deprived equity of jurisdiction, then any person desiring to proceed in violation of law could pay the maximum fine and become immune thereafter except as to damages. This is not the law.

On this point the chancellor said: ''The court is of the opinion that, regardless of my views as to the legality of the grant, the city provides by its ordinances the punishment for anyone who disregards the ordinance, but it does not take away the right of the individual who has sustained a special damage by reason of the construction. The court is of the opinion there has been no effort by the plaintiffs to obtain any judgment for special damages, [but] that such damages are recoverable in a court of law.''

There was a finding that fumes emanating from gasoline could be avoided by a proper extension of pipes; that the spotlight complained of could be changed to avoid throwing lights upon the windows of residences in the community, and that the large trucks and trailers could be so handled as to prevent the blocking of sidewalks, and that the toilet could be secluded ''so as to avoid the matters complained of.''

It is our holding that Holman as an alderman was incompetent to vote for a permit in favor of The Texas Company in order to make possible the consummation of a lease whereby Holman, individually, would profit.

The decree is reversed with directions to grant the injunction.