The Honorable Susan Schulte State Representative #13 Sunbeam Circle Cabot, AR 72032
Dear Representative Schulte:
I am writing in response to your request for my opinion on two questions relating to the hiring of a "building official" for the City of Cabot. You report the following facts:
 The City of Cabot has, by Ordinance, adopted the Southern Building Code. The Southern Building Code provides for the appointment of a "building official" responsible for enforcement of code provisions. (Section 102.2.1, Standard Building Code.) Members of the City Council now seek to present an Ordinance to the Council appointing an individual as "building official" and specifying his salary as $35,000.00 annually.
 The City Attorney has concluded that only the Mayor has the authority to make the appointment, pursuant to A.C.A. § 14-42-110 as previously interpreted in AG Opinion Number 91-395.
This dispute has prompted you to pose the following questions:
 1. Does the Mayor's authority to appoint and remove department heads pursuant to A.C.A. § 14-42-110 apply to the appointment or hiring of a "building official" for the City?
 2. Is it a conflict for a council member to vote on this issue if the council member is in the residential construction, development or home inspection business and has a monetary interest which may be affected by the" building official's" authority?
RESPONSE
In my opinion, the answer to your first question is probably "no," and the answer to your second question, assuming the council member indeed has a "monetary interest" in the building official's performance, is "yes."
Question 1: Does the Mayor's authority to appoint and remove departmentheads pursuant to A.C.A. § 14-42-110 apply to the appointment or hiringof a "building official" for the City?
In my opinion, it does not.
Section 14-42-110 of the Code (Repl. 1998) provides in pertinent part:
 (a)(1) Mayors in cities of the first class and second class and incorporated towns shall have the power to appoint and remove all department heads, including city and town marshals when an ordinance has been passed making city and town marshals appointed, unless the city or town council shall, by a two-thirds (2/3) majority of the total membership of the council, vote to override the mayor's action.
Section 14-55-207 of the Code (Repl. 1998) provides in pertinent part:
 (a) Every municipality in the State of Arkansas is authorized by the passage of a municipal ordinance to adopt by reference technical codes, regulations, or standards, without setting forth the provisions of the code or parts thereof, if three (3) copies of the code, or the pertinent parts thereof, and any related documents are filed in the office of the clerk of the municipality for inspection and view by the public prior to the passage of the ordinance.
 (b) The term "technical codes" shall include any building, zoning, health, electrical, or plumbing codes, and the term" regulations" shall include any criminal code of the State of Arkansas.
You report that the Cabot city council has in fact adopted the Standard Building Code, which provides for the establishment of a "building department" headed by a "building official."
Subsection 102.2.1 of the Standard Building Code provides in pertinent part:
 The building official shall be appointed or hired by the applicable governing authority and shall not be removed from office except for cause after full opportunity has been given to be heard on specific charges before such applicable governing authority.
(Emphasis added.) Section 14-56-202 of the Code further offers the following regarding the regulation of building in a city of the first class such as Cabot:
 The following enlarged and additional powers are conferred upon cities of the first class. They shall have the power to:
(1) Regulate the building of houses;
 (2) Provide that no house or structure shall be erected within the city limits except upon a permit to be issued by such officer as the city council shall designate; and
 (3) Provide that no permit shall be issued for the building of any house or structure deemed to be unsafe, unsanitary, obnoxious, or detrimental to the public welfare.
(Emphasis added.)
At issue is whether the provisions just quoted supersede A.C.A. §14-42-110 by locating the power to appoint the building official in the city council as opposed to the mayor. Applying standard principles of statutory interpretation, I believe this question should be answered in the affirmative. It is accepted in the construction of statutes that a general statute does not apply where there is a specific statute governing a particular subject matter. Donoho v. Donoho, 318 Ark. 637,887 S.W.2d 290 (1994). Although A.C.A. § 14-42-110 affords the mayor a general power of appointment of department heads, A.C.A. § 14-56-202
makes it clear that the individual charged with the task of monitoring construction within the city will be appointed by the city council. This express designation persuades me that notwithstanding the provisions of A.C.A. § 14-42-110, the legislature would give effect to the hiring process specified in subsection 102.2.1 of the Standard Building Code, which the legislature has authorized the city to incorporate into its ordinances pursuant to A.C.A. § 14-55-207.
Having offered this opinion, I must acknowledge the alternative possibility that the legislature, in sanctioning the general practice of adopting codes and standards by reference, did not further intend to change the mayor's authority with respect to the hiring and appointment of department heads. The relevant legislative history provides some support for this possibility. Prior to the enactment of Acts 524 and 914 of 1995, A.C.A. § 14-42-110 provided in pertinent part:
 Unless otherwise provided by state law, mayors in cities of the first class and second class shall have the power to appoint and remove all department heads . . . unless the city or town council shall, by a two-thirds (2/3) majority of the total membership of the council, vote to override the mayor's action.
(Emphasis added.) The emergency clause to Act 914 announced that the amendment, which included striking the highlighted language, was necessary in order to ensure that vacancies be promptly filled, presumably by vesting the power of appointment, subject to certain qualifications, in a single individual.
However, even assuming Acts 524 and 914 of 1995 were generally intended to expand a mayor's power of appointment, the fact remains that A.C.A. §14-56-202(2), which has not been repealed expressly or by implication, specifies that the officer charged with issuing building permits, as is the "building official" in this instance, shall be appointed by the city council. As previously noted, it is well established that where a special statute governs a particular subject, it will apply instead of a general law. Brown Root, Inc. v. Hempstead County Sand and Gravel, Inc.,767 F.2d 464 (8th Cir. 1985). If the legislature intends to relocate this power of appointment in the mayor, I believe it must do so expressly and directly.
Notwithstanding your suggestion to the contrary, I do not believe my predecessor's reasoning in Opinion No. 91-395 supports the conclusion that the mayor, as opposed to the city council, has the power to appoint the building official. Opinion No. 91-295 merely held that the mayor had the authority to appoint the police and fire chiefs, subject to the right of the city council, upon the mayor's request, to remove these officers. This opinion has no bearing on the issue of who has the authority to appoint a building official. As noted above, I believe A.C.A. §14-56-202(2) vests this authority in the city council.
Question 2: Is it a conflict for a council member to vote on this issueif the council member is in the residential construction, development orhome inspection business and has a monetary interest which may beaffected by the "building official's" authority?
Assuming the council member in fact has a "monetary interest" in the building official's performance, I believe the answer to this question is "yes."
In Ark. Op. Att'y Gen. No. 91-302, one of my predecessors offered the following conclusion regarding the status of a municipal building inspector:
 It is my opinion that a City Building Inspector would likely be deemed a municipal "officer" by a court faced with the question. His duties and compensation are usually set by city ordinance, and he is ordinarily appointed by the governing body. See generally A.C.A. § 14-56-202 (which refers to building inspectors as "officer[s]").
Accord Ark. Op. Att'y Gen. No. 2000-210. I fully agree with this conclusion.
In Ark. Op. Att'y Gen. No. 95-099, this office set forth the standard for determining whether a municipal officer faces a conflict of interests:
 With regard, generally, to the existence of a conflict, it has been stated that the phrase "conflict of interest," when used to suggest disqualification of a public official from performing his or her duties, ordinarily refers to "a clash between the public interest and the private pecuniary interest of the individual concerned." Gardner v. Nashville Housing Auth., 514 F.2d 38 (6th Cir. 1975). The "conflict of interest theory" is based "on the fact that an individual occupying a public position uses the trust imposed in him and the position he occupies to further his own personal gain. It is the influence he exerts in his official position to gain personally in spite of his official trust which is the evil the law seeks to eradicate." City of Coral Gables v. Weksler, 164 So.2d 260, 263 (Fla.App. 1964). See also generally 63A Am. Jur. 2d Public Officers and Employees § 321 (1984).
 The furtherance of the officer's personal interest is thus the focal point of the unlawful conflict of interest theory. See Van Hovenberg v. Holman, 201 Ark. 370, 144 S.W.2d 719 (1940).
In Ark. Op. Att'y Gen. No. 2000-072, another of my predecessors elaborated as follows:
 The common law prohibition against conflicts of interest is reflected in the following description of the public policy underlying the principle:
 A public office is a public trust . . . and the holder thereof may not use it directly or indirectly for personal profit, or to further his own interest, since it is the policy of law to keep an official so far from temptation as to insure his unselfish devotion to the public interest. Officers are not permitted to place themselves in a position in which personal interest may come into conflict with the duty which they owe to the public, and where a conflict of interest arises, the office holder is disqualified to act in the particular matter and must withdraw.
 67 C.J.S. Officers § 204. See also Ops. Att'y Gen. 99-349; 98-275; 94-283; and 94-446, citing Van Hovenberg v. Holman, 201 Ark. 370, 144 S.W.2d 719 (1940); Madden v. United States Associates, 40 Ark. App. 143, 844 S.W.2d 374 (1992); Acme Brick Co. v. Missouri Pacific R.R., 307 Ark. 363, 821 S.W.2d 7
(1991); and 63A Am. Jur. 2d Public Officers and Employees § 321.
 The above-quoted policy statement concerning conflicts of interest makes clear that in situations where a common law conflict of interest is present, it may be appropriate for the affected public servant to abstain from participating in any decision-making procedure that would impact upon his or her personal interests, so as to avoid the temptation of placing his self-interest above the interest of those he was elected to represent. This policy statement appears to indicate that the wrong to be avoided is the placing of self-interest above public duty. Whether a wrong of this nature has occurred is entirely a question of fact and can only be established by the presentation of factual evidence showing both the motivation and the effect of the public servant's act.
Applying the above principles to the particular facts of this case should be relatively straightforward. If, as your question suggests, the council member indeed has a "monetary interest" in the building official's decisions, it would appear that he should abstain from voting on the appointment pursuant to the common-law conflict of interests doctrine. However, determining whether any such monetary interest exists will entail conducting a factual inquiry of the sort that I am neither equipped nor authorized to undertake.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh