The Honorable David Rainey State Representative Post Office Box 642 Dumas, Arkansas 71639
Dear Representative Rainey:
I am writing in response to your request for an opinion on several questions regarding retirement benefits for a mayor who is removed from office by court order. Specifically, you relay the following information:
 The Arkansas Supreme Court recently ruled that Mayor Clay Oldner should be removed from office and the local judge is expected to enter an order implementing the removal shortly. The city attorney has indicated that, according to his calculations, Mayor Oldner should be credited with ten years and ten months of service as of the date of the Mayor's criminal conviction for infamous crimes.[1]
You pose three questions relating to this information as follows:
 1. Does Mayor Oldner's conviction and subsequent removal from office disqualify him from receiving the retirement benefits provided for under A.C.A. § 24-12-123?
 2. Does Mayor Oldner's conviction and removal from office preclude the city council from allowing Mayor Oldner to begin drawing at age fifty-five (55) under A.C.A. § 24-12-123 and, if not, may Mayor Oldner vote to break a tie vote on the early retirement issue, if the vote occurs before the removal order is filed?
 3. If the current council voted to allow Mayor Oldner to begin drawing at age fifty-five (55), would that decision be irrevocable, or could a subsequent council rescind the ordinance prior to Mayor Oldner reaching age fifty-five (55)? More specifically, can the current council bind future councils on this issue since it is a discretionary obligation that would not be payable for a couple of years (Mayor Oldner is currently 53 years of age)?
RESPONSE
It is my opinion that the answer to your first and second questions is "no." The answer to the second part of your second question is also "no," the Mayor may not vote to break a tie on the issue of whether to grant himself early retirement benefits. In my opinion, in response to your third question, a subsequent council could rescind such an ordinance prior to the time Mayor Oldner reaches age fifty-five.
Question 1 — Does Mayor Oldner's conviction and subsequent removal fromoffice disqualify him from receiving the retirement benefits provided forunder A.C.A. § 24-12-123?
In my opinion the answer to this question is "no." Section 24-12-123 of the Arkansas Code provides in pertinent part as follows:
 (a)(1)(A) In all cities of the first class in this state, any person who shall serve as mayor of the city for a period of not less than ten (10) years, upon reaching age sixty (60), or any person who shall serve as mayor of the city for a period of not less than twenty (20) years, without regard to age, shall be entitled to retire at an annual retirement benefit during the remainder of the person's natural life, payable at the rate of one-half (1/2) of the salary payable to the mayor at the time of retirement.
 (B) The governing body of the city may provide by ordinance that any person who has served as mayor for a period of not less than ten (10) years may retire upon reaching age fifty-five (55) with the benefits provided under this section.
 (2) The retirement payments shall be paid monthly and shall be paid from the city general fund.
(Emphasis added).
This statute entitles a mayor with ten years of service to the retirement benefits of the section upon reaching age sixty; entitles a mayor with twenty years of service to benefits regardless of age; and authorizes a city council to provide by ordinance for early retirement of mayors at age fifty-five with ten years of service. There is no mention in this statute of disqualification for removal from office or for criminal convictions. The only current Arkansas statute I have found that provides for forfeiture of public pension benefits upon conviction of certain crimes is A.C.A. § 24-11-821 (providing for cessation of local fire pension benefits upon conviction of a felony, among other things). The latter statute is obviously not applicable in this instance. A number of bills have been introduced over the years to disqualify public officials from retirement benefits upon conviction of certain types of crimes, but it does not appear that any have become law that would be applicable in this instance. See e.g., SB 235, HB 1006 and HB 1118 of 2001; HB 1009 of 1997; SB 241 of 1993; and Op. Att'y. Gen. 96-234. In addition, municipalities do not have authority to prescribe legislation on pension matters other than as provided by state law. See A.C.A. 14-43-601
(a)(1)(F). The pension statute in this instance, A.C.A. § 24-12-123, entitles a mayor with ten years of service to retirement benefits at age sixty. The statute uses mandatory language in subsection (a)(1)(A) (with regard to benefits at age sixty), stating that a mayor with the requisite years of service under (a)(1)(A) "shall be entitled to retire" at an annual retirement benefit. I cannot conclude, in light of this mandatory language and in light of the absence of any applicable statute authorizing the withholding of retirement benefits under the circumstances you describe, that Mayor Oldner's conviction and removal from office disqualify him from the receipt of benefits under A.C.A. §24-12-123. "See generally, Jacobs, Friel and O'Callaghan, "PensionForfeiture: A Problematic Sanction for Public Corruption," 35 Am. Crim. L. Rev. 57, 60 (Fall 1997) (stating that "pensions are not usually forfeitable without statutory authorization") and State ex rel. StateBoard of Pension Trustees v. Dineen, 409 A.2d 1256 (Del. 1979) (reaffirming an earlier decision (Dorsey v. State ex rel. Mulrine,
Del.Supr., 283 A.2d 834, 837 (1971)), to the effect that "[i]t is clear, however, that forfeiture of a vested right to a pension . . . may be made only if there is express statutory authority in the Pension Law itself, authorizing the abrogation of such a vested right").
Question 2 — Does Mayor Oldner's conviction and removal from officepreclude the city council from allowing Mayor Oldner to begin drawing atage fifty-five (55) under A.C.A. § 24-12-123 and, if not, may MayorOldner vote to break a tie vote on the early retirement issue, if thevote occurs before the removal order is filed?
In my opinion the answer to the first part of this question is "no."
Subsection (a)(1)(B) of § 24-12-123 authorizes, but does not require, a city council to provide by ordinance "that any person who has served as mayor for a period of not less than ten (10) years may retire upon reaching age fifty-five (55) with the benefits provided under this section." In light of the discussion above in response to your first question, it is my opinion that current state law does not prevent the city council from passage of an ordinance that would result in the award of early retirement benefits under A.C.A. § 24-12-123. I will note, however, that the decision of whether to pass such an ordinance lies within the discretion of the city council. Subsection (a)(1)(B) of A.C.A. § 24-12-123 is permissive, using the word "may" ("governing body . . . may provide by ordinance . . .") Id. (Emphasis added). Thus, although mayors of first class cities are entitled to certain statutory retirement benefits under § 24-12-123(a)(1)(A), they have no statutory right to early benefits under (a)(1)(B). The award of the latter benefits is entirely within the discretion of the city council.
In my opinion the answer to the second part of your second question, regarding Mayor Oldner's ability to vote to break a tie on the question, is also "no." As my predecessor stated in Op. Att'y. Gen. 2002-297:
 As a general principle of law, an officer would be disqualified from participating in a decision when he has a personal interest that might interfere with the unbiased discharge of his duty to the public. See, Van Hovenberg v. Holman, 201 Ark. 370, 144 S.W.2d 719 [144 S.W.2d 718] (1940); Op. Att'y Gen. 86-267. The Van Hovenberg case dealt with a member of the city council who voted to grant a permit to an oil company to build and operate a filling station on a lot owned by said councilman. Previous requests for a permit made by other land owners on the same street to erect a filling station had been objected to by this councilman. Also, the councilman had secured a ten-year lease with an option to purchase the station in question from the oil company. In holding the councilman incompetent to vote, the Arkansas Supreme Court stated:
 "It would be inconsistent if the law were that the collector of an improvement district, and a bridge district commissioner, could not profit through transactions with the districts, but an alderman could disregard the ordinances he has sworn to uphold by illegally constructing a filling station, and then consummate his plan to lease it by adding his vote to three others. . . ."
201 Ark. at 375.
 The furtherance of the officer's personal interest is the focal point of the unlawful conflict of interest theory. Van Hovenberg instructs that no member of a city council may vote on any question involving his own pecuniary interest, if that interest is immediate, particular, and distinct from the public interest. Accord Ops. Att'y Gen. 2000-302, 95-099, 90-160, 86-267.
Id. at 3.
In another previous opinion (Op. Att'y. Gen. 2000-072), it was stated:
 A public office is a public trust . . . and the holder thereof may not use it directly or indirectly for personal profit, or to further his own interest, since it is the policy of law to keep an official so far from temptation as to insure his unselfish devotion to the public interest. Officers are not permitted to place themselves in a position in which personal interest may come into conflict with the duty which they owe to the public, and where a conflict of interest arises, the office holder is disqualified to act in the particular matter and must withdraw.
 67 C.J.S. Officers § 204. See also Ops. Att'y Gen. 99-349; 98-275; 94-283; and 93-446, citing Van Hovenberg v. Holman, 201 Ark. 370, 144 S.W.2d 719 (1940); Madden v. United States Associates, 40 Ark. App. 143, 844 S.W.2d 374 (1992); Acme Brick Co. v. Missouri Pacific R.R., 307 Ark. 363, 821 S.W.2d 7
(1991); and 63A Am. Jur.2d Public Officers and Employees § 321.
Id. at 2-3.
In my opinion, therefore, Mayor Oldner, assuming he is still in office at the time of any such vote,[2] is disqualified to vote on any question affecting his personal retirement benefits.
Question 3 — If the current council voted to allow Mayor Oldner to begindrawing at age fifty-five (55), would that decision be irrevocable, orcould a subsequent council rescind the ordinance prior to Mayor Oldnerreaching age fifty-five (55)? More specifically, can the current councilbind future councils on this issue since it is a discretionary obligationthat would not be payable for a couple of years (Mayor Oldner iscurrently 53 years of age)?
In my opinion, in response to your specific question, a subsequent council could "rescind the ordinance prior to Mayor Oldner reaching age fifty-five."
As noted earlier, the city council is under no obligation to grant the discretionary early retirement benefits to Mayor Oldner under A.C.A. §24-12-123(a)(1)(B). If it nonetheless does so, however, by the passage of an ordinance to this effect, in my opinion Mayor Oldner does not acquire any vested right to future early retirement by virtue of the ordinance. This is true for at least two reasons.
First, it has been stated as a general principle "that there can be no `vested right' in the continued existence of a law. 16A C.J.S.Constitutional Law § 231 (1984); Ireland v. Rotenberry, 215 Ark. 771,223 S.W.2d 498 (1949) (stating that there is `[n]o vested right in the continued existence of the earlier ordinance')." Op. Att'y. Gen. 99-116
at 2. The passage of an ordinance under which Mayor Oldner might qualify for retirement benefits thus does not alone trigger any vested right to such retirement.
Second, and more importantly, even the non-discretionary portion of the statute at issue (A.C.A. § 24-12-123 (a)(1)(A)), has been held by the Arkansas Supreme Court to be a "gratuitous allowance" that does not give rise to any vested rights. The court in Robinson v. Taylor,342 Ark. 459, 29 S.W.3d 691 (2000), addressed a former Pine Bluff mayor's claim for retirement benefits under A.C.A. § 24-12-123.[3] The court began the pertinent discussion by distinguishing the earlier case of Jonesv. Cheney, 253 Ark. 926, 489 S.W.2d 785 (1973), which found a vested right in a state and employee funded retirement plan, as follows:
 . . . the retirement plan at issue in Jones v. Cheney was based on voluntary contributions from member employees. We held that such a system represents delayed compensation for services rendered in the past due under a contractual obligation inuring to the employee's benefit and is not a gratuitous allowance in which the pensioner has no vested right. Id. The retirement benefit at issue in this case, on the other hand, is to be paid entirely from the city's general fund. Ark. Code Ann. § 24-12-123. As Ms. Robinson contributed no funds, the retirement benefit was merely a gratuitous allowance. Arkansas Tech University v. Link, 341 Ark. 495, 17 S.W.3d 809 (2000). A pensioner has no vested right in a mere gratuitous allowance. Jones v. Cheney, supra. We therefore hold that Ms. Robinson's rights to retirement benefits under section 24-12-123 had not become vested at the time the General Assembly adopted Act 604 of 1991. Thus, as to any retirement benefits claimed by Ms. Robinson under Ark. Code Ann. § 24-12-123, the General Assembly was free to alter or abolish those retirement benefits without violating Article 2, section 17, of the Arkansas Constitution or Article 1, section 10, of the United States Constitution prohibiting ex post facto laws or impairment of contracts.
Id. at 463-64. (Emphasis added). See also, Ops. Att'y. Gen. 91-239 and 89-260.[4]
In my opinion the same legislative freedom alluded to above applies to the city council with respect to ordinances authorizing early benefits at age fifty-five. That is, the same freedom afforded the General Assembly to alter or abolish the statutory benefits provided by A.C.A. § 24-12-123
would in my opinion be afforded the city council to alter or abolish any benefits it established through the passage of a discretionary ordinance under A.C.A. § 24-12-123(a)(1)(B). In my opinion, therefore, a future city council would be free, as you suggest, to "rescind the ordinance prior to Mayor Oldner reaching age fifty-five."
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB: ECW/cyh
[1] You have not inquired as to the correctness of this determination and as such, I will assume for purposes of this opinion that Mayor Oldner has acquired the requisite ten years of service under A.C.A. §24-12-123.
[2] You have not indicated the exact circumstances regarding the timing of Mayor Oldner's actual removal from office. The Arkansas Supreme Court reversed and remanded the circuit court's decision on April 7, 2005.See, State v. Oldner, (Ark.Sup.Ct. 04-995, April 7, 2005).
[3] The Robinson case was decided prior to the 2001 amendment of A.C.A. § 24-12-123 that added subsection (a)(1)(B), empowering the city council to authorize earlier retirement of mayors with ten years of service at age fifty-five.
[4] In Robinson, the Mayor of Pine Bluff had not yet met the applicable years of service requirement necessary to be eligible for benefits at the time the legislature imposed a new condition that disqualified her from receiving benefits. The court characterized the relevant issue as whether Mayor Robinson's right to receive retirement benefits "vested" prior to the passage of the new act. The court held that her rights had not "vested," for two reasons: 1) she had not completed the service requirements at the time of passage of the new act; and 2) the benefits awarded under A.C.A. § 24-12-123 amount to a "gratuitous allowance" that gave rise to no vested rights. Under the facts you recite, the Mayor of Dumas will have completed the requisite ten years of service at the time of the passage of any ordinance entitling him to early retirement benefits. The Robinson court's conclusion, however, that benefits awarded under A.C.A. § 24-12-123 amounted to a "gratuitous allowance," which might be altered or abolished, does not appear to turn upon whether the requisite years of service have been obtained.