## McMillan v. Morgan.

### Opinion delivered April 19, 1909.

1. Clouds on title—title of plaintiff.—In actions to quiet title the plaintiff must succeed, if at all, upon the strength of his own title, and not upon the weakness of that of his adversary. (Page 193.)

2. Sale of land—effect of rescission.—Where a sale of land was rescinded by mutual agreement upon the parties discovering that the land described in the deed was not the land intended to be conveyed, the purchaser cannot subsequently claim title to the land so conveyed. (Page 193.)

3. Appeal and error—exhibits as part of record.—Exhibits which were attached to the pleadings in a case become part of the record and will be considered on appeal. (Page 195.)

Appeal from Clark Chancery Court; *James D. Shaver;* Chancellor; reversed.

### STATEMENT BY THE COURT.

W. S. Morgan and W. H. Fagan instituted this action in the chancery court of Clark County against Dougald McMillan and Wm. Gerig to cancel certain deeds as a cloud upon the title of the plaintiff Morgan in and to the following described lands, situated in Clark County, Arkansas, to-wit: the S. E. ¼ of the S. E. ¼ of sec. 33, and S. W. ¼ of S. W. ¼ of sec. 34, all in township 5 south, range 22 west, containing 80 acres, more or less.

The plaintiff W. H. Fagan entered certain lands of the United States in Clark County, Arkansas, under the homestead act of 1862, and received a certificate of entry from the Register of the United States Land Office at Camden, Arkansas. On the 3d day of February, 1883, a patent was issued to him by the United States, and in it the land was described as follows: the S. E. ¼ of the S. E. ¼ of sec. 33 and the S. ½ of the S. W. ¼ and the S. W. ¼ of the S. E. ¼ of sec. 34, township 5 south, range 22 west, containing 160 acres.

On the 24th day of December, 1881, Fagan conveyed by warranty deed to the plaintiff Morgan the land in controversy, together with 24 acres of adjoining land, for the consideration of $300, evidenced by two promissory notes of $150 each, one payable to W. H. Fagan, and the other to J. E. Fagan, his

brother.   In the fall of 1883, Fagan says that he sold the east half of his homestead entry to T. T. Fendley.   Fendley claims that Fagan sold him the whole of his homestead entry.   In the fall of 1884 it was discovered that the lands upon which Fagan had made his improvements and had located his homestead were not the lands described in his patent, but were one mile west of the same.   Both the lands described in the patent and those upon which Fagan located his homestead were public lands belonging to the United States.   The lands described in the patent were back in the woods.   They were hilly, had no improvements upon them, and were unfit for cultivation.   When it was discovered that the lands upon which Fagan had made his improvements and had located his homestead did not correspond with the lands described in the patent, it was agreed that Morgan's notes should be returned to him, which was done, and that J. E. Fagan should keep $22, which had been paid him on his note, and that the 24 acres should go back to W. H. Fagan.   Morgan then left the land on which the homestead had been located and never returned to it; nor did he thereafter pay any taxes or otherwise assert any claim to the lands described in the patent and in the deed from W. H. Fagan to him.

On the 31st day of October, 1902, W. H. Fagan and wife and T. T. Fendley and wife executed a quitclaim deed to the lands described in said patent to Dougald McMillan.   The consideration paid to Fendley was $20 and to Fagan $5.   It appears that the said lands described in the patent were assessed for taxes in 1885, one 80 in the name of W. H. Fagan and the other in the name of T. T. Fendley.   They were sold to the State for the taxes of 1885, and a redemption deed was executed to Dougald McMillan by the Commissioner of State Lands on the 13th day of November, 1902.   Thereafter an undivided interest in the lands was conveyed to his co-defendant, Wm. Gerig.   Other facts appear in the opinion.

The chancellor rendered a decree quieting the title of the plaintiff, Morgan, in the lands in controversy, and the defendants have appealed.

*McMillan & McMillan,* for appellants.

1.   Morgan must recover, if at all, on the strength of his

own title, and not upon the weakness of his adversary's, and the burden is on him to show title.   77 Ark. 347; 74 Ark. 387.   Not only is it clearly shown that the contract was rescinded when the mistake in the deed was discovered, but it is equally clear that he is guilty of laches in abandoning the land for a period  of over 20 years and paying no taxes thereon, asserting no title until its increase in value made it desirable. 75 Ark. 197; *Id.* 317; 81 Ark. 357; 139 U. S. 384; 169 U. S. 239; 145 U. S. 317.

2.  Fagan's claim that he did not understand that he was conveying this land is not sustained by the evidence.  To justify the reformation or correction of a deed, the proof must be clear, positive and to the entire satisfaction of the court.   15 Ark. 277; 74 Ark. 71; 73 Ark. 170; 94 U. S. 207; 14 Ark. 487.   Illiteracy is no excuse where the party was given full opportunity to inform himself, and takes time to consider and talk with friends before signing.   35 Ark. 559.

*J. H. Crawford,* for appellees.

1.   The case should be affirmed because not all of the evidence upon which it was tried is properly brought into the record.   38 Ark. 481; 80 Ark. 383; 83 Ark. 77; *Id.* 424; 84 Ark. 597; *Id.* 100; 58 Ark. 134; 36 Ark. 484; 112 U. S. 502; 147 U. S. 698.

2.   If Fendley, who was appellants' agent, in the procurement of the quitclaim deed, deceived Fagan, and induced him thereby to execute the deed, appellants will not be permitted to reap the benefit of his misrepresentations and fraud.   82 Ark. 114.

3.   Appellants' title, the quitclaim deed, is dated October 31, 1902, less than five years before commencement of this suit. Aside from the payment of taxes for four years, appellants have done nothing to improve the property or enhance its value.   The doctrine of laches should not apply in their favor.   83 Ark. 160; 76 Ark. 525; 75 Ark. 194; 70 Ark. 256.

*McMillan & McMillan,* for appellants in reply.

The clerk's certificate to the transcript shows that the patent, the several deeds, copies of records of tax receipts, copies of the real estate tax book duly certified by the county clerk, and the original tax receipts, are on file in his office.   The decree recognizes

them as a part of the record evidence and names each. If no filing mark appears on them, that is not evidence that they were not filed, if they were delivered for that purpose. 43 Ark. 148; 69 Ark. 114; 72 Ark. 149; 8 Enc. Pl. & Pr: 923.

HART, J., (after stating the facts.)  In the cases of *Chapman & Dewey Land Co.* v. *Bigelow,* 77 Ark. 347, and *St. Louis Refrigerator & Wooden Gutter Co.* v. *Thornton,* 74 Ark. 383, it was held that in actions to quiet title the plaintiff must succeed, if at all, as in actions of ejectment, upon the strength of his own title, and can not rely upon the weakness of that of his adversary.  Tested by this rule, we are of the opinion that the appellee Morgan was not entitled to prevail in this suit, because he has no title to the lands in controversy.  The evidence of both himself and his grantor, Fagan, shows that he did not purchase them, but purchased a part of the lands upon which Fagan had made improvements and located his homestead.  By mistake, the lands in controversary were described in the certificate of homestead entry issued to Fagan.  The same mistake was subsequently made in the deed from Fagan to Morgan, and in the patent from the United States to Fagan.  When the deed from Fagan to Morgan was executed, Morgan did not take possession of the lands in controversy, but did take possession of the lands upon which Fagan resided, and which he claimed as his homestead, and made improvements upon them.  Both he and Fagan testify that the lands so occupied by him, and not the lands in controversy, were the lands he intended to purchase.  When the mistake in description was discovered in 1884, Morgan left the lands on which he resided, and the notes which he had given for the purchase money were returned to him; and the possession of the 24 acres (the land described in the deed of Fagan to him with the land in controversy) was restored to Fagan.  We think the undisputed evidence shows that Morgan never intended to purchase, and that Fagan never intended to sell, the lands in controversy.  The evidence also shows that the execution of the deed, too, was a mutual mistake, and that the contract was rescinded as soon as the mistake was discovered.  The record shows that the lands in controversy are wild and unimproved, and that Morgan never paid taxes on them, or in any manner attempted to assert title to them, since his rescission of his con-

tract with Fagan and abandonment of whatever interest he had acquired under the deed from him. It necessarily follows from this conclusion as to the facts under the rule above announced that Morgan has no title to the lands, and that his complaint should have been dismissed for want of equity.

This brings us to a consideration of the interest, if any, of the appellee Fagan. Fagan says that he can not read and write. That he did not understand that he was conveying to McMillan the lands in controversy. That in 1883 he had conveyed to Fendley 80 acres of his homestead entry, and that the deed to the same had been lost. He further says that he thought he was only making another deed to this land, and did not know that he was conveying the land in controversy. In this he is flatly contradicted by Fendley and by H. J. Runyan, who took the acknowledgment to the deed. Runyan testified that Fagan on two different occasions before signing the deed talked with him about the propriety of executing it, and also talked with other friends about it. He said: "My recollection is that W. H. Fagan made two trips to Amity and talked with me at two different times before he decided to sign and acknowledge the deed conveying the above land to D. McMillan. I know that he talked with other parties who were his friends, and he talked with J. B. Boyd, who was a notary public here at that time, as to whether it would be improper for him to give a quitclaim deed to this land, he having given a prior deed to it to Thos. T. Fendley. I am quite positive that W. H. Fagan knew at the time that he signed the deed and at the time I took his acknowledgment that it conveyed the land described in said deed. He took several days before signing the deed. My recollection is that it took about a week or ten days."

Fendley testified that Fagan understood what land he was conveying, and stated that it lay in the hills, and was not worth anything to any one. The other testimony in the case shows that the land was wild and unimproved. That it was not fit for cultivation on acount of being in the hills, and was only valuable for the timber that was on it. That at the time the deed was made to McMillan there was no market for the timber because the land was so remote from a railroad that it was not practicable to use it. After McMillan's purchase, a railroad

was constructed near it, and this fact gave the timber a market value. Up to the time of McMillan's purchase, Fagan had not thought it of sufficient value to pay taxes on it, or to redeem it from tax sale, nor had any one else considered it of sufficient value to buy it at a sale for taxes. Moreover, Fagan testified: "I have no interest to the land in controversy in this action other than to see that W. S. Morgan should get the land under the deed which I made him." We think that at the time of McMillan's purchase the land had no value except a speculative one, and that he is an innocent purchaser for value.

Counsel for appellees contend that the deeds and tax receipts recited in the decree as being a part of the evidence upon which the case was heard bear no file marks, and therefore are no part of the transcript. The complaint alleges that the homestead patent from the United States to W. H. Fagan was executed. The deeds from Fagan to Morgan and from Fagan to McMillan are made exhibits to the complaint, and in that way become a part of the record. *American Freehold Land Mtg. Co.* v. *McManus,* 68 Ark. 263.

The undisputed evidence shows that no taxes were paid by appellees on the land after 1884. Hence the contention of appellee in this respect is upon an immaterial matter, and it is not necessary for us to determine it.

It is ordered that the decree be reversed, and that the cause be remanded with directions to dismiss the complaint for want of equity.