Laflin *v.* Drake.

4-9299 237 S. W. 2d 32

Opinion delivered January 22, 1951.

*Abe Collins* and *Charles R. Garner*, for appellant.

*U. A. Gentry* and *Moore, Burrow, Chowning & Mitchell*, for appellee.

Griffin Smith, Chief Justice. The appellees are daughters and sole heirs at law of U. L. Thacker. The litigation involves Lot 4 of Block 60, in Mena. Betterments assessed by Paving Improvement District No. 6 were not paid for 1940 and the property was included in a list of lots sold for delinquencies. Tax, interest, and cost, amounted to $14.72. At the foreclosure sale B. B. Laflin, Sr., bid $25 and was declared the purchaser. It is stipulated that for many years prior to 1941 general taxes were assessed in Thacker's name and the tax value for 1941 was $1,250. The lot contained a brick building worth $6,000 when forfeiture occurred, and it is worth that sum now.

In February, 1949 appellees filed a pleading styled "Intervention by Petition for Bill of Review." It was given the Chancery Court docket number used in the foreclosure. This suit was the result of an action taken by Laflin in March, 1947, when he intervened in the foreclosure proceedings by alleging that through error the comissioners issued a deed instead of a certificate of purchase. This deed was promptly approved; but, said the intervener, since the time for redemption had expired when the petition was filed in 1947, and the landowner had not offered to pay the adjudicated sum, the transaction should be judicially completed.

The Court directed the Clerk to execute a deed superseding the one prematurely issued. The old order of confirmation is dated January 27, 1942. In asking for

220

a new deed the intervener assured the Court that the foreclosure was regular in all respects and that the attending circumstances were of an approved pattern, therefore the sole matter for consideration was the naked formality of rectifying an obvious mistake made five years earlier. No service was had on the landowner, nor was notice of any kind or information given.

Thacker died in June, 1948—about eight months before the present action was brought. His daughters were non-residents and did not know of the Laflin purchase until an abstracter called their attention to the substituted deed when they undertook to sell the property. The deed in question was recorded April 14, 1947.

The bill of review alleges that the complaint of 1941, publication of notice of the suit, the decree, and the commissioner's notice of sale—all listed the owner as R. E. Johnson. Although Thacker bought the lot in 1919 and did not have his deed recorded, the real owner was generally known and had at all times been in possession through tenants.

Urged as an additional vice was the fact that the foreclosure decree, after fixing the lien, directed that if the item of $14.72 should not be paid and the obligation discharged within twenty days "from the date of this decree, said lien shall be forever foreclosed and the lands condemned." The Clerk, as commissioner, was ordered to conduct the sale ". . . after having first advertised . . . weekly for two consecutive weeks." Without waiting for the 20-day period to expire notice was given December 12, 19, and 26. The decree was dated December 4, so the result was that the publication of December 26th was the only notice given after the time allowed for paying without further cost had terminated.

Because of state aid, benefits were not collected for two years preceding the 1940 delinquency—1935 and 1938; nor were property owners required to pay for 1942 and 1943.

In disposing of the bill of review the Chancellor found that Thacker owned eight lots and had consistently

paid assessments on them; or, after default, had redeemed in a timely manner. The only exception was his failure to pay on Lot 4 for 1940. The sale was conducted January 24, 1942. After improperly receiving the deed within a few days Laflin did not undertake to change the tax listing. He did not offer to pay improvement district assessments; nor did he, until 1948, pay state and county taxes. Thacker's 1919 deed was recorded July 16, 1946.

It was stipulated that Laflin did not inform Thacker that he had bought the lot; neither did he, after Thacker's death, bring his claim to the attention of either of the appellees.

Appellants insists the present suit must fail because, as it is urged, the attack is collateral; that proceedings to vacate the order of confirmation had to be brought within six months, and that the long delay bars recovery. *Wardlow* v. *McGehee,* 187 Ark. 955, 63 S. W. 2d 332; likewise, says appellant, any error in the preliminaries and decree not going to the power to sell was cured by confirmation: and this would include the want of sufficient publication—that is, two weeks beginning when the twenty days had expired. *Neff* v. *Elder,* 84 Ark. 277, 105 S. W. 260.

It is also contended that the disparity between actual worth of the property (assuming this was a matter of common knowledge to the commissioners) and the price paid by Laflin was not sufficient to shock the conscience of a court of equity, thereby creating a conclusive presumption that fraud was not practiced on the court in procuring the decree or confirmation. *Schuman* v. *Cherry,* 215 Ark. 342, 220 S. W. 2d 187. [But see *Moon* v. *Georgia State Savings Association,* 200 Ark. 1012, 142 S. W. 2d 234].

Of course, if the order, judgment, or decree is void it may be attacked collaterally. *McDonald* v. *Fort Smith & Western Railroad Co.,* 105 Ark. 5, 150 S. W. 704. In collateral attacks facts relied upon to avoid consequences of a judgment or decree must appear upon the face of

the record. The record includes all of the pleadings, *Morrison* v. *St. Louis & S. F. R. Co.*, 87 Ark. 424, 112 S. W. 975. It also includes exhibits when they are made a part of the pleadings, *McMillan* v. *Morgan*, 90 Ark. 190, 118 S. W. 407.

The paving district's complaint of Sept. 23, 1941, shows that Lot 4 was listed as the property of R. E. Johnson. This error was carried into all proceedings where ownership was referred to, hence it definitely appears that the property was treated as belonging to Johnson—a supposition contradicted by the amendment to Laflin's intervention where he affirmatively asserted that "U. L. Thacker, who was the owner of said lot [at the time it was sold] failed to pay the amount [found to be due the district"].

There can be no contention that the names—U. L. Thacker and R. E. Johnson—are similar. "Stith" and "Smith" might cause an honest doubt, but *idem sonans* can hardly be thought of as a rule sufficiently pliable to reach Thacker when "h" is the only letter in Johnson common to the two names and phonetics affords no aid.

There is a statement in *Stith* v. *Pinkert*, 217 Ark. 871, 234 S. W. 2d 45, that Act 207 of 1937, § 4, providing for publication of notice of sale, "contains no requirement that the owner or supposed owner be named."

The matter to which references was there made appears as § 20-444, Ark. Stat's. The section immediately preceding directs that all delinquent property be included in one suit, with publication for two weeks by warning order "or notice of the pendency of such suit." It is then provided that all persons, firms, corporations, etc., claiming an interest in [the following described real property] shall be treated as having been warned by the notice that suit is pending "to enforce [the] collection of certain . . . taxes or assessments *on the subjoined list of lands, each supposed owner having been set opposite his . . . lands, together with the amount severally due from each.*"

The notice emphasized in the sentence quoted from *Stith* v. *Pinkert* is the advertisement (for two consecutive weeks) that "such sale" will be held. The language in Ark. Stat's, § 20-444, dealing with "all cases where notice has been properly given as aforesaid" is directed to procedure preceding the final notice—and this last notice, as the Stith-Pinkert opinion points out, does not require that the name of the owner or the supposed owner be there given.

Prior to 1937 the statute applicable to municipal improvement foreclosure suits (C. & M. Digest, § 5677) required that the last owner of property be named in the suit or warning order, to be listed as the name appeared in the recorder's office. Then (Pope's Digest, § 7308), as now (Ark. Stat's, § 20-417), the warrant authorized the delinquent assessment to be made "from the owner of real property," etc. The direction in Act 125 of 1913 (C. & M. Digest, § 5677, Ark. Stat's, § 20-424) is that the name of the last owner as shown in the recorder's office must be given "unless the commissioners know that some other party has acquired title; in which event such actual owner shall be made the defendant." [See compiler's notes, Ark. Stat's, v. 2, pp. 1434-35, where (p. 1435) it is suggested that § 20-424 may have been superseded or affected by Act 207 of 1937].

Act 101, approved February 17, 1937, and as to the matter pertinent here superseded by Act 207 of the same session, contained language in many respects similar to expressions found in Act 207. A material difference is that Act 101 required the name of the owner to be listed, while Act 207 says that "the proceedings and judgment shall be in the nature of proceedings in *rem,* and it shall be immaterial that the ownership [of any lot] be incorrectly alleged in said proceedings, and judgment shall be *enforced against such property, and not against any other property or estate of said defendant.*"

Act 130 of 1939 amended § 7315 of Pope's Digest by reducing to two weeks the time required for publishing a warning order. It is a substantial copy of Act 402 of

1909, construed by Judge HART in *Simpson* v. *Reinman*, 146 Ark. 417, 227 S. W. 15. In the opinion the Act is erroneously referred to as No. 502. [For a different procedure—not applicable here because it came later, see Act 195 of 1949].

The opinion by Judge HART shows that on January 4, 1917, Reinman and associates brought an action in unlawful detainer against Tillman Green to recover 90 acres. In May, 1919, Dr. R. A. Simpson intervened and procured a transfer to chancery court. It was shown that J. C. Budd owned the land in 1912 and rented to Green for five years. Green was in possession when Reinman sued. The property was sold as the result of attachment proceedings against Budd and purchased by Dr. Simpson. Budd later quitclaimed to Simpson. Reinman and those interested with him had bought the land when road district betterments were foreclosed. On December 20, 1913, they procured a certificate of purchase, followed by a commissioner's deed dated December 21, 1914. Reinman testified that in 1916 he made an oral contract with Green to rent on a third and fourth basis. This was urged as evidence of possession.

It will be observed that nearly four and a half years elapsed between issuance of the tax deed and Dr. Simpson's suit, and more than five and a half years elapsed between the decree and the intervention. The commissioners executed a deed that recited confirmation.

Similarity between the Reinman case and the litigation here is that in undertaking to foreclose the lien on the 90 acres to which J. C. Budd had paper title, the commissioners advertised the property in the name of A. E. Adams as the supposed owner, while in the case at bar Johnson was substituted for Thacker.

Judge HART, in speaking of Budd's rights, said that the paper title holder was no more bound by the proceedings against Adams as the "supposed owner" than had been the real owner in another case to which attention was called where J. E. Eubanks was named as the presumptive owner. *Farmers & Merchants Bank* v. *Layson Lum-*

*ber Co.*, 87 Ark. 607, 113 S. W. 793. Nor, said Judge HART, did the Court's construction ignore the statutory provision making it immaterial that the ownership of the land be incorrectly named in the proceedings; but, [continued the Judge] if there had been any ground for listing Adams as the supposed owner, it would have been immaterial that his name appeared incorrectly in the notice. Neither did the legislative directive for a general notice to all interested persons, requiring them to appear and make defense within the designated period, resolve the proceding into an action *in rem* as distinguished from an action *quasi in rem.*

The Court's majority in the Reinman case, as expressed by Judge HART, held that the legislature intended that an owner in possession should have constructive notice sufficiently substantial *to lead to actual notice,* "and thereby enable him to make his defense." It was further held that use of the words "supposed owners" achieved a useful purpose in relieving the commissioners of the burden of deciding between adverse claims in those cases where it would be necessary to trace title; but the commissioners are not without statutory responsibility.

The "supposed owner" would be the person believed to be such, and in the circumstances of the Reinman case, ". . . the commissioners would be charged with knowledge that the land belonged to the person in possession of it." "In short," said Judge HART, "a majority of the Court is of the opinion that the designation by the commissioners, under the statute, of the person as the 'supposed owner,' [when by exercising the slightest care they could have ascertained that Adams was not such owner] is not a compliance with the statute . . . Notice to [Adams] was not notice to the 'supposed owner' or the person they believed to be the owner as required, and the sale is therefore invalid."

We think that appellees in the case at bar had a right to accept as true the accurate statement made by Laflin in his response to appellees' petition: that Thacker owned the lot when it forfeited. The record, irrespective

of testimony, shows that the lot was being foreclosed as Johnson's property. Certainly appellant would be required, under the Simpson-Reinman decision, to overcome the presumption of negligence upon the part of the commissioners that, *prima facie,* attached to them under the pleadings and record.

Chancellor John E. Martineau, who tried the Reinman case and decided all the issues in favor of the tax-title purchaser, allowed witnesses to testify regarding circumstances attending the sale, ownership of the property, and kindred subjects. The same procedure was followed here, where the only surviving commissioner testified that the district was organized in 1931, that he had always understood Thacker owned the lot, and in fact knew it belonged to him.

Question by the Chancellor: "Who was in possession of this property when the district was organized?" A. "U. L. Thacker. It was rented to different parties, but as far as I know [Thacker] was the owner of it."

W. N. Martin, lawyer and abstracter, was collector for the district when the foreclosure was certified and prepared the delinquent list for another attorney who acted for the commissioners. Johnson's name appeared as the supposed owner: Question: "Who did you understand owned that property at the time this suit was filed?" A. "Mr. Thacker. I had never seen his deed to the lot, but it was the general understanding that he had been owning it for quite a number of years."

R. E. Johnson testified that he owned property separated from Thacker's by another lot. He had no interest in Lot 4 and had at no time claimed any.

If, on collateral attack, testimony is inadmissible for the purpose of impeaching the record, in the controversy here the record is in conflict with an essential fact admitted by Laflin. Other facts bringing the case within the Simpson-Reinman decision are covered by comprehensive stipulations.

Our conclusion is that the Chancellor correctly held that Thacker's heirs should prevail. The decree is affirmed.

[The decision in this case was reached in December, 1950, and the result concurred in by six of the judges, two of whom are not now on the court. Mr. Justices WARD and Mr. Justice ROBINSON, therefore, did not participate in a determination of the issues, or in consideration of the opinion].

Mr. Justice GEORGE ROSE SMITH concurs.

ED F. McFADDIN, Justice. (Dissenting). Heretofore we have accorded some degree of finality to foreclosure proceedings in Improvement District cases; and we have also accorded some degree of finality to orders confirming the sales and approving the deeds in such cases. The holding in the present case does much to destroy all such ideas of finality.

A lengthy dissent might be written, discussing the line of demarcation between a collateral attack and a direct attack on a judgment, and also showing that the present suit is a *collateral attack* by all the tests stated in all the cases. A lengthy dissent might also be written listing our cases which hold that Improvement District foreclosures are proceedings *in rem*. But I forego the writing of such a dissent, in the hope that the future cases of this Court will serve to limit and distinguish the present case, and thus eventually get us back to what I regard as the authentic holdings on these points.

It is my view that the case at bar is ruled by *Pinkston* v. *Schuman,* 210 Ark. 896, 198 S. W. 2d 66; *Pinkert* v. *Lamb,* 215 Ark. 879, 224 S. W. 2d 15, and *Stith* v. *Pinkert,* 217 Ark. 871, 234 S. W. 2d 45, and cases cited in those opinions.